IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ESCORT, INC., ) | |
| ) | Case No. 1:12-cv-937 |
| Plaintiff, ) | |
| ) | Chief Judge Susan J. Dlott |
| v. ) | |
| ) | |
| K-40 ELECTRONICS, LLC, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT K-40 ELECTRONICS, LLC'S REPLY IN SUPPORT OF ITS
MOTION TO STAY PENDING THE PATENT OFFICE'S REEXAMINATION
OF THE PATENTS-IN-SUIT**

Defendant K-40 Electronics, LLC ("K-40") respectfully replies to the opposition of Plaintiff Escort, Inc. ("Escort") to K-40's motion to stay this action pending a decision by the United States Patent and Trademark Office ("Patent Office") on K-40's pending petitions for inter partes review of Escort's patents.

As discussed below, it is not "speculation" that inter partes review by the Patent Office in this case would simplify the issues for trial. It is 100% guaranteed. Either the review will eliminate some or all of the asserted patent claims, or it will eliminate the key prior art. No other outcome is possible. The only way there would be no simplification is if K-40's petitions are among the less than 6% of petitions that are denied, but in that circumstance, the stay will likely be lifted in only a few months, so the stay will result in no material delay. If, on the other hand, the petitions are granted, as 94% have been since 1999, a stay will conserve judicial resources during the stay, and after the stay the case will be litigated more efficiently—if it is litigated at all. The stay will not harm Escort, because the case is only about money damages. Escort identified the allegedly infringing feature in writing, and K-40 removed that feature. K-40 also

ceased the conduct that forms the basis of Escort's non-patent claims. If Escort still has claims to bring after the Patent Office finishes its work, Escort can pursue them at that time.

I.     **K-40's request for a stay is not premature.**

1.     Escort argues that the requested stay is premature because the Patent Office has not yet granted K-40's petitions for review. But K-40's motion was narrowly tailored. Specifically, K-40 moved to stay this case pending the Patent Office's decision on the question of whether to grant the petitions. K-40 wrote: "If the Patent Office grants the petitions, the stay should remain in place until the review is complete. If the Patent Office denies the petitions, litigation can resume." It is now May; the Patent Office can reasonably be expected to act by the end of July. If the Patent Office denies the petitions, nothing has been lost. But the odds are against that, as the Patent Office *grants 94%* of the requests for inter partes reexamination it receives, according to its most recent published statistics. *Ex. 1*.

K-40 moved to stay at the earliest possible time, because that is what the law encourages. One of the factors in whether to grant a stay is whether a trial date has been set. Moreover, Escort's complaint that the motion is premature should be taken with a handful of salt. There can be little doubt that if K-40 had waited for the Patent Office to grant its petitions before it filed its motion, Escort would be objecting to the delay and opposing the stay on that basis.

2.     After it filed its opposition, Escort submitted a notice of supplemental authority (Doc. 23) directing the Court to a May 6, 2013 order in *One StockDuq Holdings, LLC v. Becton, Dickinson & Co.*, No. 2:12-cv-3037 (W.D. Tenn.), in which a motion to stay was denied without prejudice as premature because the Patent Office had not yet ruled on the petition at issue. But the fact that 94% of petitions for inter partes reexamination from 1999 to 2012 were granted was not before the *One StockDuq* court. If that fact had been known, the outcome might have been

different.  More importantly, the defendant seeking a stay was Becton, Dickinson, a public company with nearly 30,000 employees and $8 *billion* in annual revenue.  Becton, Dickinson is better able to bear the cost of litigation while waiting for the Patent Office to decide whether it will reexamine the patents-in-suit than is K-40, a small business with 15 employees.  The expense and burden involved in several months of discovery means little to a corporate giant like Becton, Dickinson, but it could be crushing to a company of K-40's size.  Finally, the *One StockDuq* ruling is contrary to the great weight of the authority holding that given that the likelihood that the petitions will be granted, the stay should be entered now, *before* K-40's resources and judicial resources are spent on a case based on patents that may be invalidated by the Patent Office.  As one court explained in granting a motion to stay pending a petition for inter partes review that, like the petitions in this case, had not yet been granted:

> [T]he statutory arrangement [of an inter partes review] promises an expeditious response from the PTO on whether to conduct inter partes review. *In other words, if the PTO declines inter partes review, little time is lost*, but if the PTO grants inter partes review, the promise is greater for an important contribution by the PTO to resolution of the governing issues in the litigation. . . .  [T]he PTO apparently will not consume much time unless the PTO perceives an important patent issue within the PTO's particular expertise; and because an important issue that appears in the litigation also appears to fall within the PTO's province and particular expertise, *prudence commends resort to a stay until either the PTO declines review, or, finding an important issue within the PTO's special province, the PTO grants and completes review to the benefit of the parties, the court, and the public.*  In other words, the investment of some time at this junction appears wise.

*Capriola Corp. v. LaRose Indus., LLC*, No. 8:12-cv-2346, Doc. No. 49, at 4-6 (M.D. Fla. Mar. 11, 2013) (emphasis added), attached as *Appendix*; *see also, e.g.*, *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.,* 2012 WL 7170593, at *1 (C.D. Cal. Dec. 19, 2012) (granting stay while petitions for inter partes review were still pending).

3

**II.     The requested reexamination will simplify the issues for trial in this case.**

3.      Escort asserts: "Thus, even if granted, inter partes review is ultimately unlikely to have any impact on either of the patents-in-suit or simplify any of the issues here." *Opp.* at 1. Escort provides no support for that assertion. None exists. <u>To the contrary, it is *guaranteed* that an inter partes review of Escort's patents will simplify the issues in this case, *either* by eliminating some or all of Escort's patent claims from the case or by eliminating K-40's allegedly invalidating prior art.</u>  Escort is correct that one can only speculate as to the ultimate conclusion of the Patent Office. That is true in every case in which a stay is requested, and yet as shown in K-40's opening memorandum, Ohio district courts typically grant such stays. But such speculation is not uninformed. Rather, it is informed by the fact that the Patent Office *rarely* allows patents to pass through its review unscathed. In 89% of cases, some or all of the patents claims are cancelled or changed. *Ex. 1*. Past damages are not available for such claims.

But if this is the rare case in which the patents survive intact, K-40 will be precluded in this Court from challenging the validity of Escort's patents based on any prior art that was raised or could have been raised in the Patent Office. Consequently, it is *not* speculation that an inter partes review would simplify the issues in this case. It is a 100% certainty. <u>There is *no* scenario in which an inter partes review would not significantly simplify the case.</u>

4.      Escort argues: "K-40's assertion that most reviews result in claims being cancelled addresses the wrong question. The relevant question is whether any of the original claims will be confirmed." *Opp.* at 5. Respectfully, that is *not* the relevant question. If *no* claims are confirmed, there will be *no* patent claims to try in this Court. If only *some* claims are confirmed, there will be *fewer* claims to try in this Court. That is simplification by definition. *See, e.g., Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, No. 1:10-cv-1370, 2013 WL 1662952 at

4

\*5 (N.D. Ohio Apr. 17, 2013) ("That a few of those claims may survive without amendment does not mean that the issues will not be significantly streamlined.").

5. Escort complains: "There is nothing in K-40's Motion that explains why the review process is more effective at simplifying issues than the discovery that will take place in this lawsuit." *Opp*. at 6. First, the review process will confirm or invalidate patent claims or eliminate prior art with finality. The discovery process will not do that. Discovery may, as Escort's authority suggests, allow the parties "to ferret out the strengths and weaknesses of an adversary's case." *Opp*. at 6. But discovery cannot dispose of issues. The reexamination process will do so, definitively. Second, discovery is expensive and burdensome. K-40 is a small business with 15 employees. Already, Escort has served requests for production so broad as to call for virtually every document K-40 has. *Ex. 2*. Discovery of that nature is *not* "effective at simplifying issues," nor, frankly, is that Escort's purpose in serving such requests. Rather, discovery—and its attendant disputes—is something it is desirable to avoid if possible. Indeed, Congress's objective in enacting patent reform was "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." *Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents*, 77 Fed. Reg. 48,680 (Aug. 14, 2012) (codified at 37 C.F.R. §§ 42.100 et seq.). Accordingly, in crafting the inter partes review regulations, the Patent Office created "a timely, cost-effective alternative to litigation." *Id*. K-40 seeks to avail itself of that alternative.

6. Escort attempts to mislead the Court by suggesting that the prior art that is the subject of K-40's petitions—the Hoffberg and Fleming references—were "considered previously" by the Patent Office. *Opp*. at 2. The file histories of Escort's patents do not show

*any* rejections of any of the particular patent claims being asserted against K-40 based upon Hoffberg.  Regarding Fleming, the Patent Office did not reject any of the claims based on Fleming with respect to the asserted claims of one of the patents-in-suit.  In the other patent-in-suit, Escort avoided rejections in view of Fleming by submitting an improper declaration.  The propriety of that declaration under the Patent Office's rules is exactly what the Patent Office, with its vast particularized expertise, will determine in inter partes review.

More importantly, what the Patent Office did previously is irrelevant.  *Either* the Patent Office will deny the petitions, in which case the stay costs little, *or* as with 94% of petitions, the Patent Office will grant the stay, thereby finding "a reasonable likelihood that petitioner would prevail with respect to at least 1 of the claims challenged in the petition," 35 U.S.C. § 314(a), *in view of* the Hoffberg and Fleming references *regardless* of whether they were previously before the Patent Office.  In the latter eventuality, the Patent Office will *either* cancel or modify one or more claims of the patent, thereby simplifying the case (at least), *or* confirm all the claims, thereby eliminating from the case the Hoffberg and Fleming references and any other prior art that K-40 could have brought before the Patent Office.  Thus, Escort is wrong when it argues, "K-40 offers abundant speculation but little actual evidence to support the claim that *these* particular requests for inter partes review will have a beneficial effect on *this* particular litigation."  *Opp.* at 1.  This is *not* "pure guesswork."  *Opp.* at 4.  It is a <u>certainty</u> that if K-40's requests are granted, *this* litigation will be significantly simplified.  "Moreover, the litigation of claims before a panel of specialized experts will refine the issues and create a record that would inform, assist, and expedite any subsequent litigation in this Court."  *Progressive*, 2013 WL 1662952, at *7.

6

7. Escort claims that the stay "is unknowable in duration." *Opp.* at 2. That is incorrect. By statute, inter partes review is limited to 12 months, with no more than one 6 month extension. Escort writes "there may be a time consuming appeal." But, by statute, the inter partes review has estoppel effect on pending litigation *before* any appeal. 35 U.S.C. § 315(e)(2). This was one of the principle improvements enacted in the 2011 patent reform law. Prior to the new law, inter partes reexamination could have been a lengthy process—and courts *still* granted stays. The new law shortens the review.[1] Escort's colorful depiction of the stay as "an odyssey without end" is simply inaccurate.

8. Escort protests that the Patent Office's inter partes review would not simplify its unfair competition claims. Those claims are brought under the theory that somehow, by not labeling its radar detectors are manufactured in Korea, K-40 violated the Lanham Act and state unfair competition statutes. Those claims are not cognizable. *See, e.g.*, *York Group, Inc. v. Horizon Casket Group, Inc.*, 459 F. Supp. 2d 567, 574-80 (S.D. Tex. 2006). Regardless, K-40's motion acknowledges that those claims would be impacted by a stay. However, the relevant question is whether the stay would simplify the issues for trial in the case, not whether it would dispose of every possible issue. The stay will at least narrow and may resolve the complicated patent infringement claims. That will be a huge benefit even in the unlikely event the designation-of-origin claims remain to be tried.

Importantly, it is undisputed that K-40 is presently labeling its products as made in Korea, so the designation-of-origin claims are at most about past damages, not injunctive relief.

---

[1] Patent reform also shortened the appeal process. Previously, decisions of examiners in reexamination were subject to appeal to the then-existing Board of Patent and Trademark Appeals, which had a huge backlog. Now, inter partes review determinations are appealed directly to the Federal Circuit, 35 U.S.C. § 319, which typically disposes of appeals in less than a year, as it has for the past decade. *See* Federal Circuit Statistics, *available at* http://tinyurl.com/bnbrpuw.

Escort can ultimately be made whole, with interest, regardless of when trial occurs. Consequently, it makes sense to let the Patent Office do its work.

### III. The requested stay will not harm Escort.

9. Escort asserts in a heading: "K-40's Infringement Causes Direct Competitive Harm." *Opp.* at 6. But nothing Escort writes in the subsequent text supports that bold claim. Instead, Escort writes:

> K-40 alleges that its manufacturing partner has removed a single feature from its product. That, however, does not necessarily mean that its newly designed products do not infringe Escort's patents. K-40 does not offer any analysis that would suggest that removal of this single feature somehow takes its products outside the scope of the '905 and '721 patents. If such an argument existed, clearly it would have discussed it in detail.

*Id.* at 6. This is a remarkable passage. The "mark to mute" feature that K-40 removed is the basis for Escort's infringement claims. Escort revealed this to K-40 *in writing*. *See, e.g.*, Ex. 3 (correspondence). The non-infringement analysis is simple: Escort claimed that K-40 was infringing because of the "mark to mute" feature, and only the "mark to mute" feature. K-40 removed the "mark to mute" feature.

Moreover, proving infringement is Escort's burden. It is not K-40's burden to prove non-infringement. Escort has not revealed its element-by-element infringement theories (because it is so early in the case, further favoring a stay). If Escort has some argument to make for why infringement may be continuing notwithstanding the removal of what *it* alleges is the infringing feature, *it* should make that argument. It is not acceptable for Escort to argue that K-40's new products are "not necessarily" non-infringing. Even to *pursue* infringement claims against the new products, Escort must have a good faith basis that it can prove infringement. That is apparently lacking, and understandably so: Escort demanded that K-40 remove the mark-to-

8

mute feature, and K-40 did so. As a consequence, this case is only about money damages, not injunctive relief, and a stay would impose no harm on Escort.

10. Escort offers the generic argument that during a stay, "[w]itnesses become unavailable, their memories may fade, and evidence may be lost, including electronic records made obsolete or effectively unrecoverable because of advances in technology." *Opp.* at 7. That is true in every case. Yet courts still stay cases pending reexamination. *Sorensen ex rel. Sorensen Research & Dev. Trust v. Black & Decker Corp.*, No. 06-cv-1572, 2007 WL 2696590, at *4 (S.D. Cal. Sept. 10, 2007) ("Protracted delay is always a risk inherent in granting a stay, yet courts continue to stay actions pending reexamination. The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay.").

Escort identifies no particularized concern of any witness in this case who may become unavailable or suffer from fading memory. Escort identifies no electronic record that may become "obsolete or effectively unrecoverable because of advances in technology," nor does it even explain what this means. Such concerns are particularly misplaced in this case, because it is a patent infringement case. The accused radar detectors are tangible objects. Escort presumably has already obtained them in the market place. Whether they are compared by experts to the patent claims now or 18 months from now, the result will be the same, and it will not depend on anyone's memory. Likewise, whether the patents are valid will depend on the comparison of the prior art references to the patent claims, and that will be the same whenever it occurs. And to whatever extent evidentiary staleness is a concern, it is a concern that affects both parties equally. Escort offers no explanation to the contrary.

11. Escort "expects that it will require discovery from K-40's foreign partner." *Opp.* at 7. Escort writes: "As the Court is well aware, there are substantial time delays involved in

gathering such foreign discovery, which would only be compounded by K-40's request for a stay." *Id.* at 7. First, there is no reason the requested stay would "compound" delays involved in foreign discovery. Whether the discovery period begins now or after the Patent Office completes the inter partes reviews, the difficulties of foreign discovery will be exactly the same. Second, it is difficult to take Escort's argument seriously, given that Escort has proposed to the Court a schedule even faster than that contemplated by the Local Patent Rules. Escort has not proposed sufficient time to take Hague Convention discovery, casting doubt on its assertion that it intends to do so. Further, while Escort served K-40 with document requests, interrogatories, and requests for admission within hours of the Rule 26(f) conference, it has not attempted to serve any foreign entity. This suggests the issue is a red herring.

12. According to Escort, "K-40 has the burden of showing hardship or inequity would result from the absence of a stay." *Opp.* at 40. That is not the law. No case says that. The cases considering stays pending reexamination are legion, and they recite the same standard: Courts consider (1) whether a stay will simplify the issues in question and trial of the case; (2) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; and (3) whether discovery is complete and whether a trial date has been set. *Ohio Willow Wood Co. v. Alps South, LLC*, No. 2:05-cv-1039, 2011 WL 2358649, at *2 (S.D. Ohio June 9, 2011). Showing "hardship or inequity" if the requested stay is denied is not a requirement. To the contrary, "[t]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of re-examination, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery." *Aten Int'l Co. v. Emine Tech. Co.*, No. SACV 09-0843, 2010 WL 1462110, at *6 (C.D. Cal. Apr. 12, 2010) (internal quotation marks omitted); *Progressive*, 2013 WL 1662952, at *5 ("Staying a case at an early juncture advances judicial

efficiency and will maximize the likelihood that neither the Court . . . nor the parties expend their assets addressing invalid claims.") (internal quotation marks omitted).

In any event, the "hardship or inequity" is obvious. Patent litigation is extremely expensive. The most recent survey by the American Intellectual Property Law Association shows that the average cost of a case of this nature is $2.5 million. K-40 is a 15-employee business. K-40 has no in-house attorneys to manage the litigation or to sweep up the enormous volume of documents that Escort has demanded. *See Ex. 2*. Any company of this size would be overwhelmed by patent litigation, which is likely Escort's intent. But it would be particularly inequitable for K-40 to go through a resource-swallowing lawsuit only to learn *afterward* that the Patent Office invalidated the patents. It would be more equitable, and more efficient, to stay the litigation while the Patent Office completes its work, so that if some or all of Escort's patent claims never should have been issued, K-40 is not impaired by defending against them. This is particularly so because the stay will inflict no harm whatsoever on Escort.

13. Escort concludes its opposition by rebutting an argument about "inconsistent results" that K-40 did not make. *Opp.* at 8-9. This portion of Escort's brief appears to have been copied and pasted from a response to a motion to stay in another case, because K-40 wrote nothing about "inconsistent results" or "parallel proceedings." Nevertheless, it is worth observing that, by opposing the stay, Escort is inviting a circumstance in which K-40 could be held liable for infringing patents that the Patent Office later determines are invalid. Or a circumstance in which the Court holds Escort's patents invalid, but, while that judgment is on appeal, the Patent Office confirms their validity in light of the same prior art. Or a circumstance in which the Court finds certain patent claims invalid and others valid, but the Patent Office later reaches the opposite result, and *both decisions* become final.

11

On the other hand, by granting the stay, the Court will ensure consistent results and will permit a specialized body to determine whether these patents ever should have been issued.  In doing so, the Court will preserve the resources of the parties and the Court, and will simplify the case, all without unduly prejudicing Escort.  All the factors favor granting the requested relief.  K-40 respectfully requests that the Court grant its motion.

    Respectfully submitted,

*/s/ Lauren M. Papenhausen*
Lauren M. Papenhausen (MA BBO #655527)
*Trial Attorney*
McDERMOTT WILL & EMERY LLP
28 State Street
Boston, Massachusetts  02109
Telephone: (617) 535-4000
E-mail: lpapenhausen@mwe.com

Michael S. Nadel (admitted *pro hac vice*)
*Co-Counsel*
McDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
Telephone: (202) 756-8000
E-mail: mnadel@mwe.com

*Attorneys for Defendant K-40 Electronics, Inc.*

Dated:  May 10, 2013

## CERTIFICATE OF SERVICE

      I certify that on May 10, 2013, I filed this document using the CM/ECF system, which caused a notice of its filing to be served upon all counsel of record.

                                          By:    */s/ Lauren M. Papenhausen*
                                                     Lauren M. Papenhausen

DM_US 42581444-1.092284.0011